IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BENNIE SCOTT,                                    :

      Plaintiff,                              :

vs.                                              :            CIVIL ACTION 07-293-KD-C

DONALD GAINES, et al.,                           :

      Defendants.                            :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Sergeant Donald Gaines, Correctional Officer Michael McCrory, Correctional Officer Willie Harris, Sergeant James English, and Deputy Warden Anthony Patterson (Docs. 23, 24) and Plaintiff's opposition thereto. (Docs. 1, 12). After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

1. On January 22, 2007, while incarcerated at Holman Correctional Facility

("Holman"), Plaintiff was attacked by a fellow inmate while eating dinner in the prison kitchen.  (Doc. 1 at 4, Complaint).

2. The record shows that, at approximately 4:30 p.m., a fellow inmate, Timothy Stanton, approached Plaintiff from behind and cut his throat with a prison made box cutter.  (Doc. 1 at 4; Doc. 24, att. 6 at 3, Incident Report).

3. Inmate Stanton exited the kitchen and walked up to Defendant Officer McCrory who was standing in the hall at the pill call window.  (Doc. 1 at 4; Doc. 24, att. 2 at 2, McCrory affidavit).

4. Inmate Stanton handed the weapon to Officer McCrory and told him that he had just cut Plaintiff's throat.  (Doc. 1 at 4-6).

5. Officer McCrory ordered inmate Stanton to stand against the wall, and Stanton complied.  (Doc. 24, att. 2 at 2).

6. Officer McCrory observed Plaintiff coming out of the kitchen holding his throat. (Id.).  He instructed Defendant Officer Harris to escort Plaintiff to the health care unit and called for assistance on his radio.  (Id.).

7. Officer McCrory escorted inmate Stanton to segregation, and informed Defendant Sergeant Gaines of the assault.  (Id.).

8. Sergeant Gaines ordered that the facility be "lock[ed] down."  (Id.; Doc. 24, att. 6 at 4).

9. When Plaintiff arrived at the prison health care unit, he was bleeding "profusely" from a ten-inch laceration on his neck.  (Doc. 24, att. 6 at 6, Medical Records).  The

2

medical staff began emergency treatment and called an ambulance to transfer Plaintiff to North Baldwin Hospital, where he was admitted.  (Id. at 5-6).

10. Following the incident, Sergeant Gaines conducted an investigation and questioned inmate Stanton about the assault.  (Id. at 4, Incident Report).

11. Stanton informed Sergeant Gaines that he attacked Plaintiff in retaliation for Plaintiff breaking into his locker "box" and making comments to him that he did not like. (Id.).

12.  Stanton was charged with a disciplinary for violating Rule 31, assault on another inmate.  (Id. at 4).

13. Plaintiff was charged with a disciplinary for violating Rule 62, intentionally creating a security, safety, or health hazard.  (Id. at 9-10, Disciplinary Report).

14. Defendant English presided over Plaintiff's disciplinary hearing and found Plaintiff guilty of the rule violation based on the findings of Sergeant Gaines' investigation.  (Id.).

15. Officer English recommended that Plaintiff be given disciplinary segregation for twenty days and that Plaintiff be referred to classification for a possible custody increase. (Id. at 10).

16. Defendant Deputy Warden Patterson approved the recommendation on February 20, 2007.  (Id.).

 17. On April 20, 2007, Plaintiff filed the present § 1983 action asserting an Eighth Amendment claim against Defendants, Sergeant Donald Gaines, Correctional Officer

Michael McCrory, Correctional Officer Willie Harris, Sergeant James English, and Deputy Warden Anthony Patterson.[1]  (Doc. 1).

18. Plaintiff claims that Defendants Gaines and Harris failed to protect him from the assault by inmate Stanton and that Defendants Gaines, McCrory, English, and Patterson conspired to blame him for the assault and charge him with a disciplinary violation for creating a security hazard.  (Doc. 1 at 4-6, 9-13).

19. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (Doc. 1 at 14).

20. In their Answer and Special Report filed on April 21, 2008, Defendants deny that they violated Plaintiff's constitutional rights and assert the defenses of absolute and qualified immunity.  (Docs. 23, 24).

21. On May 2, 2008, the Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment.  (Doc. 25).  That motion and Plaintiff's opposition thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

---

[1] Plaintiff's Complaint also alleges an Eighth Amendment claim against an "Officer Staple," who Defendants maintain does not exist.  (Doc. 24 at 1, Special Report).  In any event, for the reasons set forth herein, Plaintiff's claim against this defendant fails as a matter of law.

4

summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c).

3. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

4. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

5. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).        6. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v.

Midway Servs., Inc., 508 F.3d 641, 647 (11ᵗʰ Cir. 2007) (citations omitted).

### III. DISCUSSION

1. As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of an attack by another inmate.  (Doc. 1).

2. Specifically, Plaintiff alleges that Defendants Gaines and Harris violated his Eighth Amendment rights by failing to protect him from the attack by inmate Stanton and that Defendants Gaines, McCrory, English, and Patterson violated his Eighth Amendment rights by conspiring to blame him for the attack and charge him with a disciplinary violation.  (Id.).

3. As discussed above, Defendants deny that they violated Plaintiff's constitutional rights and further assert the defenses of absolute and qualified immunity.[2]  (Docs.  30, 31, 38, 43).

_____

[2]In his Complaint, Plaintiff does not specify whether he is suing Defendants in their official or individual capacities.  Therefore, the Court will consider both.
    As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

4. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

5. The Eighth Amendment provides that, "[e]xcessive bail shall not be required,
nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.
Amend. VIII.

6. The Eighth Amendment's proscription against cruel and unusual punishment
prohibits prison officials from exhibiting deliberate indifference to a substantial risk of
serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

7. In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989),
the Supreme Court summarized a state's constitutional responsibilities with regard to
inmates:

> [W]hen the State takes a person into its custody and holds him
> there against his will, the Constitution imposes upon it a
> corresponding duty to assume some responsibility for his
> safety and general well-being. . . .  The rationale for this
> principle is simple enough: when the State by the affirmative
> exercise of its power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same time
> fails to provide for his basic human needs -- *e.g.*, food,
> clothing, shelter, medical care, and reasonable safety -- it
> transgresses the substantive limits on state action set by the

Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

8. In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)."  LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

9. In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

10. The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner."  LaMarca, 995 F.2d at 1535.

11. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'"  Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

12. The objective standard "embodies broad and idealistic concepts of dignity,

8

civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

13. The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

14. This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

15. In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted).

16. In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.

17. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40.

18. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Farmer, 511 U.S. at 838.

19. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual subjective knowledge is the key.  See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

20. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'"  Farmer, 511 U.S. at 844-45 (citations omitted).

21. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  Id.

22. Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

A.    Failure to Protect.

23. In his Complaint, Plaintiff claims that Defendants Gaines and Harris violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the attack by inmate Stanton.

24. Plaintiff argues that Defendant Harris was assigned to the kitchen area and never saw the attack.  (Doc. 1 at 4).  Plaintiff maintains that Officer Harris failed to provide "any type of security."  (Doc. 1 at 5, 11).

25. In addition, Plaintiff claims that Sergeant Gaines failed to protect him by failing to remove him from the general population before the attack and place him in

10

segregation so that inmate Stanton could not attack him.  (Id. at 10).

26. As discussed above, the evidence shows that, at the time of the attack, inmate Stanton approached Plaintiff from behind as Plaintiff  sat at a table in the prison kitchen eating dinner.  (Doc. 24, att. 6 at 3-6).  Using a prison-made box cutter, Stanton cut Plaintiff's throat, leaving a ten-inch laceration on his neck.  (Id.).

27. Stanton then walked out of the kitchen, handed his weapon to Officer McCrory, and told Officer McCrory that he had cut Plaintiff's throat.  (Id.).  Officer McCrory ordered Stanton to stand against the wall as Plaintiff came to the door holding his hand to his neck.  (Id.).  Officer McCrory ordered Officer Harris to take Plaintiff to the prison health unit and radioed for assistance.  (Id.).  Officer McCrory took Stanton to segregation, and the other officers locked down the facility.  (Id.).

 28. In order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm."  Farmer, 511 U.S. at 834.

29. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. . . ."  Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1320 (11th Cir. 2005) ("confinement in a prison where violence and terror reign is actionable.").

30. On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment."  Purcell, 400 F.3d at 1320 (citations

omitted).

31. "[A] prison custodian is not the guarantor of a prisoner's safety." Purcell, 400 F.3d at 1321 (citations omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

32. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." Farmer, 511 U.S. at 844.

33. In the present case, Plaintiff has not established, nor even alleged, that he was exposed to the "constant threat of violence" while incarcerated at Holman, see Purcell, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834; see also Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack). Therefore, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

34. However, assuming, *arguendo*, that Plaintiff did satisfy the objective element of his Eighth Amendment claim, he must also show that Defendants were deliberately indifferent to the risk of serious harm to him.

35. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. LaMarca, 995 F.2d at 1537.

36. "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838.

37. "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" <u>Hale</u>, 50 F.3d at 1583 (quoting <u>Farmer</u>, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842).

38. In this case, Plaintiff has presented no evidence that Officer Harris, Sergeant Gaines, or any other Defendant knew of a substantial risk of serious harm to Plaintiff and was deliberately indifferent to that risk.

39. Plaintiff has presented no evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." <u>Farmer</u>, 511 U.S. at 842 (internal quotation marks omitted).

40. Moreover, Plaintiff has presented no evidence that any Defendant was aware of a risk of harm to Plaintiff from inmate Stanton in particular.  There is no evidence, nor even an allegation, that Stanton, or any other inmate, had made threats against Plaintiff and that these threats had been made known to any of the Defendants.

41. According to Plaintiff, he and inmate Stanton had argued previously over money that Plaintiff claimed inmate Stanton owed him, but Plaintiff had resolved the

disagreement.  (Doc. 24, att. 6 at 11).  Even Plaintiff was unaware that he was in danger of being attacked by inmate Stanton.

42. The evidence related to the attack itself similarly indicates that it was premeditated, isolated, and deliberately executed without warning.  Neither Plaintiff nor Defendants had any reason to suspect that Plaintiff was in danger of being attacked or that he needed to be segregated from inmate Stanton for protection.

43. Because Plaintiff has failed to show that any of the Defendants knew that a substantial risk of serious harm existed, *i.e.*, that Plaintiff was at risk of being harmed by another inmate, and they knowingly or recklessly declined to take action to prevent that harm, he has failed to satisfy the subjective element of his Eighth Amendment claim as well.  Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment failure to protect claim.

B.    <u>Conspiracy</u>.

44. Next, Plaintiff claims that Defendants Gaines, McCrory, English, and Patterson conspired to violate his constitutional rights by blaming him for the attack by Stanton and charging him with a false disciplinary rule violation.[3]

45. Specifically, Plaintiff alleges that Sergeant Gaines conducted an investigation

---

[3] At his disciplinary hearing, Plaintiff was found guilty of creating a security hazard and given twenty days in disciplinary segregation and a referral to classification for a possible increase in custody.  (Doc. 1 at 4-6, 9-13; Doc. 24, att. 6 at 10).   The record also shows that inmate Stanton was charged with violating rule #31, assault on another inmate (Doc. 24, att. 6 at 4), although it is not clear precisely what punishment he received.

after the incident and falsely reported that Plaintiff had broken into inmate Stanton's locker several weeks before the assault, thereby prompting the attack. (Doc. 1 at 9-10; Doc. 24, att. 1 at 2, Gaines Affidavit).

46. Plaintiff alleges that Defendant McCrory filed a disciplinary report against him based on Sergeant Gaines' false findings. (Doc. 1 at 9-10).

47. According to Plaintiff, Defendant English presided over his disciplinary hearing and found him guilty of creating a security hazard based on the false information reported by Sergeant Gaines. (Id. at 5-6, 9, 12). Sergeant English also refused to allow Plaintiff to call inmate Stanton as a witness. (Doc. 24, att. 3 at 2).

48. Defendant Patterson approved Defendant English's finding, as well as his recommendation that Plaintiff receive twenty days in disciplinary segregation and be referred to classification for a possible custody increase. (Doc. 1 at 6; Doc. 24, att. 6 at 10).

49. Plaintiff alleges that "all Defendants acted in concert with each other to try to justify what took place in the kitchen area on 1-22-2007." (Doc. 1 at 6).

50. "Conspiring to violate another person's constitutional rights violates section 1983. Dennis v. Sparks, 449 U.S. 24, 27 101 S. Ct. 183, 186 (1980); Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled in part on other grounds by Whiting v. Traylor, 85 F.3d 581, 584 n. 4 (11th Cir. 1996)." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable

wrong to support the conspiracy.'  <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir. 1990), cert. denied, 500 U.S. 932, 111 S. Ct. 2053, 114 L. Ed. 2d 459 (1991). . . .  [T]he linchpin for conspiracy is agreement . . ."  <u>Bailey v. Board of County Comm'rs of Alachua County</u>, 956 F.2d 1112, 1122 (11th Cir. 1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants. . . .  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)."  <u>Rowe</u>, 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1133 (11th Cir. 1992).

<u>Flynn v. Scott</u>, 2006 WL 1236718, *6 (M.D. Ala. 2006) (unpublished).

51. Having carefully reviewed Plaintiff's Complaint and the record in this case, there is no evidence to support Plaintiff's theory that Defendants conspired to deprive him of his constitutional rights.

52. Specifically, Plaintiff has failed to show that Defendants "reached an understanding" to violate his constitutional rights or committed an "actionable wrong to support the conspiracy."  <u>Bendiburg</u>, 909 F.2d at 468; <u>Bailey</u>, 956 F.2d at 1122.

53. Assuming, as Plaintiff alleges, that Sergeant Gaines' investigative findings were false and that Sergeant Gaines knew that they were false, there is no evidence that any of the other Defendants knew that the information was false.

54. Moreover, Plaintiff premises his conspiracy claim on the disciplinary that he

16

received for creating a security hazard.  However, he fails to point out any defects in his disciplinary proceedings.

55. Although Plaintiff complains that he was not allowed to call inmate Stanton as a witness, Sergeant English's testimony establishes that the decision not to allow inmate Stanton to testify was based on concerns that Plaintiff and/or Stanton would be in danger of another assault.  (Doc. 24, att. 3 at 2, English affidavit).  Cf. Powell v. Carroll,  2006 WL 2715128, *9 (S.D. Ala. 2006) ("[O]rdinarily the right to present evidence is basic to a fair hearing, but the inmate's right to present witnesses [in a disciplinary hearing] is necessarily circumscribed by the penological need to provide swift discipline in individual cases," and "by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Id. (citing  Ponte v. Real, 471 U.S. 491, 495 (1985)).

56. Where Plaintiff's assertions are "self serving," "purely conclusory," and fail to assert the material facts necessary to establish a conspiracy between the Defendants, Defendants are entitled to summary judgment on the conspiracy claim.  Flynn, 2006 WL 1236718 at *7.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Sergeant Donald Gaines, Correctional Officer Michael McCrory, Correctional Officer Willie Harris, Sergeant James English, and Deputy Warden Anthony Patterson are entitled to summary

judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 7th day day of October, 2008.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

_____

MAGISTRATE JUDGE' S  EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.     <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     <u>Transcript (applicable where proceedings tape recorded)</u>.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

19